# 11-5151

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In re: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER
PURSUANT TO 18 U.S.C. SECTION 2703(D)

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

v.

JACOB APPELBAUM; ROP GONGGRIJP; BIRGITTA JONSDOTTIR,
*Defendants–Appellants,*

and

TWITTER, INCORPORATED,
*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

## Public Reply Brief of Movants-Appellants

Aden J. Fine
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Cindy A. Cohn
Lee Tien
Marcia Hofman
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

*Attorneys for Birgitta Jonsdottir*

Rachael E. Meny
John W. Keker
Steven P. Ragland
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Jacob Appelbaum*

John D. Cline
Law Office of John D. Cline
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
(415) 322-8319

*Attorney for Rop Gonggrijp*

*(additional counsel listed on inside cover)*

Rebecca K. Glenberg
American Civil Liberties
   Union of Virginia
   Foundation, Inc.
530 E. Main Street,
   Suite 310
Richmond, VA 23219
(804) 644-8080

K.C. Maxwell
Law Office of K.C. Maxwell
235 Montgomery Street,
   Suite 1070
San Francisco, CA 94104
(415) 322-8817

Nina J. Ginsberg
DiMuroGinsberg, P.C.
   908 King Street,
   Suite 200
Alexandria, VA 22314
(703) 684-4333

John K. Zwerling
Stuart Sears
Zwerling, Leibig & Moseley,
   P.C.
180 North Alfred Street
Alexandria, VA 22314
(703) 684-8000

*Attorney for
Birgitta Jonsdottir*

*Attorneys for
Rop Gonggrijp*

*Attorneys for
Jacob Appelbaum*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................2

I.    THE COURT HAS JURISDICTION OVER THIS APPEAL. .......................2

II.   THE DISTRICT COURT ERRED BY NOT CONDUCTING A
DE NOVO REVIEW. ....................................................................3

III. THE DISTRICT COURT ERRONEOUSLY SEALED THESE
JUDICIAL ORDERS AND MOTIONS. .........................................5

    A.  The Common Law Right Of Access Attaches To These Documents.......5

       1.  Court Orders And Motions Concerning § 2703 Proceedings Are
Judicial Records. .................................................................5

       2.  These § 2703 Orders And Motions Should Not Be Treated As
Grand Jury Documents. .......................................................7

    B.  The First Amendment Right Of Access Applies To These Judicial
Orders And Motions. ...............................................................10

    C.  The Government Failed To Meet Its Burden To Overcome The
Presumption Of Access. ...........................................................13

       1.  The Government's General Interests In Investigative Secrecy
Are Not Sufficient To Justify Sealing. ............................................13

       2.  The District Court Erred By Failing To Conduct A Document-
By-Document Sealing Analysis. .....................................................20

       3.  The District Court Erroneously Failed To Redact These
Documents Or To Explain Why Redactions Would Not Be
Sufficient. ........................................................................ 22

  IV. THE DISTRICT COURT ERRED IN NOT REQUIRING PUBLIC
DOCKETING. .........................................................................24

CONCLUSION ..............................................................................29

i

# TABLE OF AUTHORITIES

## Cases

*ALCOA v. EPA*, 663 F.2d 499 (4th Cir. 1981)......................................................3, 4

*Application of the U.S. for an Order Authorizing the Interception of Oral Commc'ns*, 563 F.2d 637 (4th Cir. 1977) ...............................................................2

*Arizona v. Gant,* 556 U.S. 332 (2009) ...................................................................25

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ............................... passim

*Butterworth v. Smith*, 494 U.S. 624 (1990) .............................................................9

*Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979) ......................................9

*Hartford Courant Co. v. Pellegrino,* 380 F.3d 83 (2d Cir. 2004) ..........................26

*In re a 18 U.S.C. § 2703(d) Order Issued to Google, Inc. on June 10, 2011*, No. 11-ec-00056 (E.D. Va. Feb. 28, 2012).....................................................................16

*In re Application & Affidavit for a Search Warrant*, 923 F.2d 324 (4th Cir. 1991) 3, 11, 20

*In re Application of N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009).................................................................13

*In re Charlotte Observer*, 882 F.2d 850 (4th Cir. 1989) .........................................15

*In re Grand Jury Proceedings*, 503 F. Supp. 2d 800 (E.D. Va. 2007).....................8

*In re Grand Jury Subpoena*, 920 F.2d 235 (4th Cir. 1990) ......................................8

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ................................... 19, 23

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) ........................9

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ..................................................9

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008) ...............................................................................................5

*In re State-Record*, *Co.*, 917 F.2d 124 (4th Cir. 1990)........................... 2, 26, 27, 28

*Keene Corp. v. United States*, 508 U.S. 200 (1993) ................................................12

*Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005) ...... passim

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ....................................7, 11

*NLRB v. Frazier*, 966 F.2d 812 (3d Cir. 1992) .........................................................4

*Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002) ...............................................4

*Pepsico v. Redmond*, 46 F.3d 29 (7th Cir. 1995).......................................... 5, 6, 10

*Press-Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501 (1984) (*Press-Enterprise I*) ...........................................................................................................................11

*Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1 (1986) (*Press-Enterprise II*) ...................................................................................................................... 10

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)...............................11

*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988)............ passim

*United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ..............................................6

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983).........................................10

*United States v. Foster*, 564 F.3d 852 (7th Cir. 2009).....................................17, 18

*United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997)........................................ 2

*United States v. Mentzos*, 462 F.3d 830 (8th Cir. 2006)....................................6, 10

*United States v. Moussaoui*, 65 F. App'x 881 (4th Cir. 2003) ...........................5, 20

*United States v. Simone*, 14 F.3d 833 (3d Cir. 1994) .............................................10

*United States v. Soussoudis (In re Wash. Post Co.),* 807 F.2d 383 (4th Cir. 1986) .2, 24, 27

*United States v. Valenti,* 987 F.2d 708 (11th Cir. 1993) .........................................27

*United States v. Williams*, 504 U.S. 36 (1992) .........................................................8

*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004) .......... passim

**Statutes**

18 U.S.C. § 2518 ...................................................................................12

18 U.S.C. § 2701, *et seq.* ......................................................................12

18 U.S.C. § 2703 ...........................................................................passim

18 U.S.C. § 2705 .....................................................................................9

18 U.S.C. § 3123 ...................................................................................12

28 U.S.C. § 1291 .....................................................................................2

28 U.S.C. § 1651 .....................................................................................2

28 U.S.C. § 636 .......................................................................................3

**Other Authorities**

Judicial Conference Policy on Sealed Cases, Sept. 13, 2011, *available at* http://www.uscourts.gov/uscourts/News/2011/docs/JudicialConferencePolicyonSealedCivilCases2011.pdf .....................................................................25

Julia Angwin, *Secret Orders Target Email*, Wall St. J., Oct. 9, 2011, *available at* http://online.wsj.com/article/SB10001424052970203476804576613284007315072.html ................................................................................ 6, 16

**Rules**

E.D. Va. Local Crim. R. 49......................................................................27

Fed. R. App. P. 21 ....................................................................................2

Fed. R. Civ. P. 79 ............................................................................. 26, 27

Fed. R. Crim. P. 55............................................................................ 25, 27

Fed. R. Crim. P. 6.............................................................................. 9, 25

**INTRODUCTION**

The government now concedes that it made a "strategic decision" to unseal the Twitter Order. Unsealing may turn on strategic considerations, but sealing may not. Having determined that it was "in the best interest of the investigation" to unseal the Twitter Order, the government has eliminated all of the traditional reasons for investigative secrecy that it claims warrant continued sealing of the other § 2703 orders and related motions in this case.

Because the government relies exclusively on its general need for secrecy in ongoing investigations and does not provide any specific facts demonstrating that these particular documents need to remain sealed in these circumstances, the government has failed to meet its heavy burden to overcome the right of access. At a minimum, there is no reason why the documents cannot be made available in redacted form, withholding any sensitive information that the unsealing of the Twitter Order did not disclose. Had the district court conducted a *de novo* review of the magistrate's orders or conducted a document-by-document sealing analysis, as it was required to do, it would have come to that very conclusion. Because it did not, and because it similarly did not follow this Court's clear caselaw requiring public docketing of even sealed judicial documents, the Court should vacate the district court's order and unseal these judicial orders and motions.

1

## ARGUMENT

## I.     THE COURT HAS JURISDICTION OVER THIS APPEAL.

The government does not dispute that this Court has jurisdiction over this case.  Instead, it simply asserts that jurisdiction is available under the All Writs Act, 28 U.S.C. § 1651, and Fed. R. App. P. 21(a), not under 28 U.S.C. § 1291. Gov't Br. at 3-4.  That assertion is not correct.[1]  Regardless, whether this matter is treated as an appeal or as a petition for a writ of mandamus, the ultimate issue is the same:  "[T]his case really boils down to whether the district court abused its discretion in sealing and redacting the documents here sought."  *United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997); *see also United States v. Soussoudis (In re Wash. Post Co.)*, 807 F.2d 383, 387-88 (4th Cir. 1986) (treating an appeal concerning sealing as a petition for mandamus).[2]

---

[1] Where, as here, a district court resolves all of the matters raised in an "independent plenary proceeding," the order has the "requisite finality to make it appealable under section 1291."  *Application of the U.S. for an Order Authorizing the Interception of Oral Commc'ns*, 563 F.2d 637, 641 (4th Cir. 1977).  In the alternative, "an order unsealing district court documents is an appealable collateral order" under 28 U.S.C. § 1291.  *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 574 n.4 (4th Cir. 2004).

[2] Although writs of mandamus are "issued only in extraordinary circumstances," *In re Wash. Post Co.*, 807 F.2d at 393, the Court has not hesitated to unseal improperly sealed documents in the mandamus context.  *Id.*; *In re State-Record, Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (vacating and remanding sealing order).

## II.    THE DISTRICT COURT ERRED BY NOT CONDUCTING A DE NOVO REVIEW.

The government's attempt to avoid *de novo* review fails for three principal reasons.[3] First, on appeal (contrary to its position below), the government agrees with the district court that "[t]he magistrate judge had jurisdiction to issue the order pursuant to 28 U.S.C. § 636(b)(3)." Gov't Br. at 2. That is fatal to its attempt to avoid *de novo* review because "duties additionally assigned to magistrates under 28 U.S.C. § 636(b)(3) are reviewed *de novo*." *In re Application & Affidavit for a Search Warrant*, 923 F.2d 324, 326 n.2 (4th Cir. 1991).

Second, *de novo* review was required because the ultimate discretion to seal documents lies with the district court, not the magistrate, even where the magistrate has the initial power to make the sealing decision. *Id*. Contrary to the government's assertion, this principle is not limited to the *voir dire* context.

Finally, *de novo* review was required because the magistrate's orders resolved all of the relief requested in this independent, miscellaneous proceeding. They therefore "disposed" of the entire underlying matter. *See, e.g.*, *ALCOA v. EPA*, 663 F.2d 499, 501-02 (4th Cir. 1981) (holding that a magistrate's order was

---

[3] The district court's application of the wrong standard of review is not "academic," Gov't Br. at 24, because, despite the court's assertion that it also conducted a *de novo* review, its substantive analysis demonstrates that it did not actually do so. *See, e.g.,* JA-279; JA-281.

"dispositive" where it resolved all of the relief requested in the proceeding);[4] *NLRB v. Frazier*, 966 F.2d 812, 815, 817 (3d Cir. 1992) (same).

The government's argument that the magistrate's orders were not dispositive because they did not terminate the grand jury investigation is unavailing.[5] This independent plenary proceeding was instituted for the sole purpose of vacating the Twitter Order and unsealing the related judicial records.[6] It does not address, let alone challenge, anything occurring before the grand jury, a separate proceeding to which Movants are not a party.[7]

---

[4] The government's attempt to distinguish *ALCOA* by limiting it to the administrative search warrant context of that case is without support. Regardless of the context of the underlying investigation, the legal issue is the same: when a magistrate issues an order resolving all of the relief requested in the proceeding before it, that order is "dispositive" and is reviewed *de novo* by the district court.

[5] The government's assertion that Movants "described the 'matter' as the government's investigation" below, Gov't Br. at 22, is not accurate.

[6] The government's analogy to "pre-trial matters" in a criminal case, Gov't Br. at 23, is not applicable. The motions here were not filed in a pending criminal case.

[7] The government does not dispute that Movants' First Amendment claim should have been reviewed *de novo*. It is also clear that even if the district court were correct that a less stringent standard applies, on questions of law, it should have applied a *de novo* standard. *See, e.g.*, *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).

4

### III.   THE DISTRICT COURT ERRONEOUSLY SEALED THESE JUDICIAL ORDERS AND MOTIONS.

#### A.   The Common Law Right Of Access Attaches To These Documents.

##### 1.   Court Orders And Motions Concerning § 2703 Proceedings Are Judicial Records.

The government cannot support its contention that these judicial orders and motions are not "judicial records." Orders and opinions issued by courts are core judicial records, subject to the right of access. As this Court observed in *United States v. Moussaoui*, 65 F. App'x 881 (4th Cir. 2003): "'The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.'" *Id.* at 885 (internal quotation marks omitted); *Pepsico v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Opinions are not the litigants' property. They belong to the public . . . ."); *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (rejecting permanent sealing of § 2703(d) orders because "documents authored or generated by the court itself" are in the "top drawer of judicial records").

Legal motions that are reviewed and relied upon by the court in rendering decisions are likewise judicial records. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (including documents attached to motions as

among the "judicial records and documents" to which the presumption of access attaches); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (holding that documents filed with courts that are "relevant to the performance of the judicial function and useful in the judicial process" are judicial documents).

The government attempts to evade these holdings by claiming that these § 2703 orders and motions are akin to requests for "business records" that are not "useful to the judicial process." Gov't Br. at 25. That argument makes no sense. The motions to seal, unseal, or vacate the § 2703 orders at issue here[8] were filed with, reviewed, and relied upon by the lower court in determining whether to issue and seal these orders. They are, thus, judicial records subject to the right of access. *Stone*, 855 F.2d at 180-81; *Amodeo*, 44 F.3d at 145. The § 2703 orders resolving such motions, in turn, are the very epitome of judicial records. *See, e.g.*, *United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006); *Pepsico*, 46 F.3d at 31.

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989), is dispositive on this point. In that case, the Court rejected a similar argument, holding that search

---

[8] There is no mystery as to the motions Movants seek to unseal: the government's motion to unseal the Twitter Order, which the government concedes should be unsealed, JA-62-63; and any other motions related to these § 2703 proceedings, including motions to unseal or vacate the other § 2703 orders. Movants do not seek access to the government's § 2703 applications or affidavits on appeal. It is clear that these motions likely exist. *See* Julia Angwin, *Secret Orders Target Email*, Wall St. J., Oct. 9, 2011, *available at* http://online.wsj.com/article/SB10001424052970203476804576613284007315072.html; ███████████████

warrant affidavits are judicial records because they are reviewed and relied upon by judges to reach decisions and filed with the court.  *Id*. at 63-64.  If government affidavits are judicial records, court orders and motions are also judicial records.[9]

### 2. These § 2703 Orders And Motions Should Not Be Treated As Grand Jury Documents.

The government alternatively contends that even if these documents are judicial records, "[n]ot [a]ll '[j]udicial [r]ecords' [a]re [s]ubject to a [p]resumption of [a]ccess," Gov't Br. at 27, and that because § 2703 orders relate to "investigative proceedings," they should be treated as grand jury documents, which are not judicial records.  That argument ignores this Court's clear caselaw to the contrary.

First, "the common law presumption in favor of access attaches to *all* 'judicial records and documents,'" *Stone*, 855 F.2d at 180 (emphasis added) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (same).

Second, the Court has refused to exempt judicial records related to pre-indictment, ongoing investigations from the right of access.  *See, e.g.*, *Va. Dep't of State Police*, 386 F.3d at 579-80 (affirming unsealing of documents related to

---

[9]*Baltimore Sun* concerned affidavits that contained sensitive details about the government's investigation, while this case involves court orders and motions lacking any such details.  If anything, therefore, there was a greater need for secrecy in the *Baltimore Sun* context.

ongoing criminal investigation); *Baltimore Sun*, 886 F.2d at 66 (vacating decision sealing pre-indictment search warrant affidavits); *see also Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429-30 (4th Cir. 2005) (applying the normal procedural requirements for sealing to pre-indictment search warrant affidavits).

Finally, § 2703 documents are not grand jury documents, and § 2703 proceedings are not grand jury proceedings. Grand jury proceedings are distinct from other forms of proceedings. *See United States v. Williams*, 504 U.S. 36, 47 (1992) ("[T]he grand jury is an institution separate from the courts, over whose functioning the courts do not preside . . . ."). As a result, this Court has narrowly defined what constitutes "matters occurring before the grand jury." *See, e.g.*, *In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990) (finding that materials obtained by search warrants were not grand jury materials, even though there was a pending grand jury investigation); *In re Grand Jury Proceedings*, 503 F. Supp. 2d 800, 807-08 (E.D. Va. 2007) (noting that the Fourth Circuit has narrowly construed "matter[s] occurring before the grand jury" (internal quotation marks omitted)). Grand jury documents are issued by the grand jury and kept in the grand jury files. At issue here are judicial orders, issued and signed by federal judges, and legal motions, filed with and kept by the district court.

Implicitly recognizing that these documents are not grand jury documents, the government attempts to expand grand jury secrecy principles to cover all

8

"investigative proceedings," a much broader category. Gov't Br. at 27. The cases cited by the government for this broader proposition all involve actual grand jury proceedings, however, not other "investigative proceedings." *See, e.g., Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.9 (1979); *In re Sealed Case*, 199 F.3d 522, 525-26 (D.C. Cir. 2000); *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998); *see also Baltimore Sun*, 886 F.2d at 65 (contrasting the clear "rule of secrecy" for "matters occurring before a grand jury" with the silence of the federal rule governing search warrants).

That the government could have issued a grand jury subpoena here instead of obtaining a § 2703(d) order does not change anything. Had the government done so, it would have been prevented from gagging the subpoena's recipient. *See* Fed. R. Crim. P. 6(e)(2) (exempting grand jury subpoena recipients from secrecy obligations); *see also Butterworth v. Smith*, 494 U.S. 624, 635-36 (1990). That, of course, is what the government was able to accomplish by obtaining a § 2703(d) order and a non-disclosure order under 18 U.S.C. § 2705(b). The government cannot have it both ways. It cannot treat § 2703 orders as grand jury documents for "judicial record" purposes—to avoid the presumption of access—but treat them as non-grand jury documents for sealing purposes—to enable it to gag the recipient.

**B.     The First Amendment Right Of Access Applies To These Judicial Orders And Motions.**

Contrary to the government's and the district court's assertions, the "experience" and "logic" prongs of the First Amendment right of access test are "complementary" prongs and are not both required where, as here, the judicial process at issue is relatively new. *Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*). Thus, in *Press-Enterprise II*, the Supreme Court held that the First Amendment right attached to certain pretrial proceedings even though they had "no historical counterpart," because the "importance of the … proceeding"—the logic prong—was clear. *Id.* at 11 n.3; *see also United States v. Simone*, 14 F.3d 833, 838 (3d Cir. 1994); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983).

*Baltimore Sun* is not to the contrary. That case did not involve a new judicial process, but search warrant proceedings, which have a centuries-old tradition of closure. That well-established history of closure obviated the need for the Court even to consider the "logic" prong.

In any event, both prongs establish that there should be a First Amendment right to the § 2703 orders and motions at issue here. With respect to the "logic" prong, court orders, including § 2703 orders, represent the backbone of our judicial system. *See, e.g., Mentzos*, 462 F.3d at 843 n.4; *Pepsico*, 46 F.3d at 31. They need to be publicly accessible, so that the public can see how the courts are responding

10

to these still novel § 2703 requests and serve as that "watchful eye" over our judicial system. *Nixon,* 435 U.S. at 598. These § 2703 orders and motions, thus, furnish an "opportunity both for understanding the system in general and its workings in a particular case." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

That these documents arise in the context of the criminal justice system "magnifie[s]" the importance of access to them because, *inter alia*, "[t]he public has legitimate concerns about methods and techniques of police investigation." *In re Application & Affidavit*, 923 F.2d at 330-31. Openness regarding § 2703 orders and motions therefore "enhances both . . . basic fairness . . . and the appearance of fairness so essential to public confidence in the system," *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*), as well as increasing the likelihood that these § 2703 orders are warranted and not overbroad, *Nixon*, 435 U.S. at 598.

The government contends that these benefits are merely theoretical and that openness would frustrate its ability to conduct investigations. Gov't Br. at 35-36. But the disputed materials are not evidence files or documents containing details about an investigation; they are orders issued by courts and related motions. The Twitter Order ██████████████████████ demonstrate that these other orders do not contain any sensitive information. To the extent any other orders

11

contain still-sensitive information, the solution—to preserve both the right of access and law enforcement's ability to operate—is to redact that information. *See infra* at 22-23.

The "experience" or "history" prong also supports unsealing of these documents. Under the statute that created § 2703 proceedings, the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701-2712, the statutory default is openness, not secrecy. The SCA does not automatically provide for the sealing of § 2703 orders; indeed, it contains no provision authorizing sealing. That is not an accident. The Pen/Trap Statute, which parallels the SCA in several ways and which was enacted alongside the SCA as Title III of ECPA (the SCA is Title II), specifically requires that an order issued under its provisions "be sealed until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). The Wiretap Act similarly provides that "[a]pplications made and orders granted under this chapter shall be sealed by the judge." 18 U.S.C. § 2518(8)(b). The absence of a similar provision in the SCA means that Congress intended for § 2703 orders to be treated like all other judicial orders, subject to the presumption of access. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another …, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alterations in original) (internal quotation marks

omitted)).

This statutory default of openness for § 2703 proceedings weighs strongly in favor of a First Amendment right of access. From the time of their creation, § 2703 proceedings have presumptively been open, meaning that they have a "history" of openness for sealing purposes. *Cf. In re Application of N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 (2d Cir. 2009) (holding that "since the time of their creation in Title III," wiretap applications "have been subject to a statutory presumption *against* disclosure," which leads to the conclusion that they have "not historically been open" (emphasis in original)). That the government has successfully managed to re-write this history by seeking to seal § 2703 orders whenever it requests them should not be dispositive. The statute, not the government's use of it, controls the analysis here. *Id*. at 405-06 (stating that the governing statute is the proper place to begin evaluating whether there is a right of access).

### C. The Government Failed To Meet Its Burden To Overcome The Presumption Of Access.

#### 1. The Government's General Interests In Investigative Secrecy Are Not Sufficient To Justify Sealing.

The government's principal argument in favor of sealing is the generic assertion that documents related to pre-indictment investigations must always be sealed to preserve the integrity of ongoing investigations. Gov't Br. at 31-32. This

Court has made clear, however, that the government's general interest in "protecting the integrity of an ongoing law enforcement investigation" does not justify sealing all investigatory documents. *Va. Dep't of State Police*, 386 F.3d at 577-79. Because "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation," *id.* at 579, "it is not enough [for the government] simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information." *Id*. The government must, thus, present "specific facts and circumstances" to justify the sealing of each specific document. *Id.*; *see also Baltimore Sun*, 886 F.2d at 66 (vacating the sealing of pre-indictment search warrant affidavits based on the general "public interest in the investigation of crime," and holding that "conclusory assertions" justifying sealing "are insufficient to allow review" and that "specificity is required").

The government fails to satisfy these standards and simply suggests that unsealing pre-indictment documents would create general risks that (1) the subject/target of the order will destroy evidence, flee, or alter his behavior, and (2) the witness-recipients of these orders will be intimidated and chilled from providing the requested information. Gov't Br. at 34. These assertions provide no specific facts or circumstances, much less any explanation, of why those risks

14

would occur here, where, *inter alia*, the Twitter Order has been unsealed, the other orders were issued to large companies that are unlikely to destroy evidence or to be intimidated, and the orders are likely complied with already.

The truth is that the government's strategic decision to unseal the Twitter Order dramatically undermined the traditional reasons for sealing investigative materials. Its unsealing has publicly revealed, *inter alia*: (1) the existence of this particular government investigation; (2) the individuals whose information the government is seeking; (3) the specific information being sought; (4) the tools the government is using to obtain information; and (5) the time period of interest to the government. JA-19–21 (Twitter Order). Those are the very details that the government now claims would be revealed if the other § 2703 orders were unsealed. Gov't Br. at 28, 37. Because the government's decision to unseal the Twitter Order has already disclosed these very details, however, continued sealing is not appropriate. *See, e.g., Va. Dep't of State Police*, 386 F.3d at 575 (unsealing documents and holding that the government does not have a compelling interest in keeping information that is publicly known secret); *In re Charlotte Observer*, 882 F.2d 850, 854-55 (4th Cir. 1989) (same).

For example, given that the individuals identified in the Twitter Order already know that the government is utilizing electronic surveillance tools to seek information about their communications, locations, and associations, any risk that

they (or other individuals) would alter their behavior, flee, or destroy evidence if other § 2703 orders were disclosed has already passed. As one court recently explained in rejecting what appears to be a very similar argument proffered by the government for continued secrecy of another § 2703 order: "The existence of the investigation in issue and the government's wide use of § 2703(d) orders and other investigative tools has been widely publicized now. It is difficult to imagine circumstances in which this Google subscriber . . . has not assumed government access to this account and acted accordingly." *In re a 18 U.S.C. § 2703(d) Order Issued to Google, Inc. on June 10, 2011*, No. 11-ec-00056, Mem. Op. at 2 (E.D. Va. Feb. 28, 2012).

There is likewise no real risk that the service provider-recipients of these other orders will be chilled from cooperating if the orders are unsealed now because they have almost certainly complied with them already. The Twitter Order ████████████████ issued fifteen months ago, and news reports indicate that other orders in this case have been satisfied already. *See* Angwin, *supra* at 6 n.8. The government has not denied this.

Nor is there any reason to believe that there would be a serious risk of intimidation for these particular recipients, even if the orders have not been fulfilled. The companies that received these other orders are likely prominent companies that are not going to "disappear" or be "scared off." Nor are they

entities Movants can control or intimidate.  Again, the government says nothing to the contrary.

The government has now revealed that it made a "strategic decision" to unseal the Twitter Order.  Gov't Br. at 7, 9.  Although unsealing can be a strategic decision, sealing cannot.  Judicial records can be sealed only if they contain information warranting sealing, not because of tactical considerations.  *See, e.g.*, *United States v. Foster*, 564 F.3d 852, 854 (7th Cir. 2009) (Easterbrook, J.) (reversing sealing, and holding that only certain factors can justify sealing: "Statutes, yes; privileges, yes; trade secrets, yes; risk that disclosure would lead to retaliation against an informant, yes; a witness's or litigant's preference for secrecy, no").  The information disclosed in the Twitter Order—and that would be revealed by unsealing the other orders—is either appropriately sealed under the law or it is not.  Having determined that unsealing the contents of the Twitter Order is "in the best interest of the investigation," JA-98, the government had the obligation to justify continued sealing of the other orders and motions based on the specific risks unsealing causes here, not on its strategic benefit.

The government claims that these documents should nevertheless remain sealed because they allegedly contain "information that is not already in the public domain."  Gov't Br. at 41.  The only information not yet publicly known, however,

is which other entities received these orders.[10]  Because these recipients are likely

large companies not subject to intimidation and because they have likely already

complied with these other orders, there is no basis for keeping their identities

secret here, even if they or the government would prefer that.  *Foster*, 564 F.3d at

854.  Even if there were a legitimate reason, the solution would be to redact those

names from the documents.

The government's repeated argument that "the mere number of Section

2703(d) orders issued" must be kept secret, Gov't Br. at 37, 41, is similarly

unpersuasive.  The government has publicly made clear how seriously it is taking

its investigation of WikiLeaks, and it has admitted using § 2703 orders to obtain

information.  Revealing the number of § 2703 orders will not pose any additional

risks.

The government also claims that the publicity surrounding the unsealing of

the Twitter Order demonstrates that these other orders should remain sealed.  That

argument, like the district court's related assertion that unsealing these documents

"would create perverse incentives" because, "[f]or example, a party could leak a

controversial sealed document to the press, then point to the ensuing publicity as

evidence that further sealing is unnecessary," JA-279, is wildly misplaced.  There

was no "leak" here.  The government chose to unseal this now supposedly-secret

---

[10]

information.

Because the government has not provided any "specific facts and circumstances" to demonstrate why these specific documents should remain sealed, the government has failed to meet its heavy burden, under either the common law or the First Amendment right. That is especially the case given the significant public interest in obtaining access to these documents. *See* Opening Br. at 35-40. These documents concern a matter of immense national interest. The government does not contest that; instead, it puzzlingly contends that this fact is "inapplicable here." Gov't Br. at 39. But as the Court held in *In re Knight Publ'g Co.*, "whether release would enhance the public's understanding of an important historical event" is a critical part of the sealing analysis, and the WikiLeaks situation certainly qualifies. 743 F.2d 231, 235 (4th Cir. 1984).

The public interest in access to these documents is also especially high because they will shed light on the government's use of its increasingly important, but little-seen, electronic surveillance powers. Opening Br. at 37-38. The government's contention that this public interest can be fulfilled by unsealing the documents at some indefinite future date when a charging document is filed or the investigation is closed "unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public

19

disclosure." *In re Application & Affidavit*, 923 F.2d at 331 (internal quotation marks and citation omitted).

### 2. The District Court Erred By Failing To Conduct A Document-By-Document Sealing Analysis.

The government acknowledges that the district court did not conduct a document-by-document sealing analysis with respect to these judicial orders and motions, but asserts that "there is no legal basis for requiring the court to undertake document-by-document review." Gov't Br. at 45. That assertion is wrong.

This Court has made clear that courts are required to conduct a sealing analysis "with respect to *each document* sealed," because "[o]nly then can it accurately weigh the competing interests at stake." *Stone*, 855 F.2d at 181 (emphasis added); *see also Va. Dep't of State Police*, 386 F.3d at 576 (same).[11]

The government's argument that individualized analysis is only necessary to determine the source of the right of access for each document is incorrect. Once the source of the right is decided, "we must then determine whether [the district court] also correctly rejected [the government's] asserted compelling governmental reason to keep *each document* sealed." *Va. Dep't of State Police*, 386 F.3d at 578 (emphasis added). Thus, in *Moussaoui*, the Court directed the government to explain "as to each document" both the source of the right of access and whether

---

[11] The district court claimed that this Court's decision in *Media General* held that document-by-document analysis is not required. JA-280–81. There is no support for that contention, and even the government does not make that argument.

continued sealing was appropriate. 65 F. App'x at 889. That makes obvious sense: to determine if a particular document can be sealed, courts must weigh the competing interests for and against disclosure for each document, based on the specific facts and circumstances of each document. *See, e.g.*, *Va. Dep't of State Police*, 386 F.3d at 579.

The district court's failure to conduct a document-by-document analysis led it, like the magistrate, erroneously to focus its analysis exclusively on the § 2703 affidavits and applications and to ignore the other § 2703 orders and motions. *See* Opening Br. at 40-42. The government attempts to defend this error by claiming that "[t]he district court's analysis mirrored the Subscribers' arguments," and that "[b]efore the district court, the Subscribers focused primarily on unsealing the application for the Twitter Order." Gov't Br. at 46. That is not true. Even a cursory review of Movants' lower court briefs makes clear that Movants' primary focus below was the sealing of the other § 2703 orders. *See, e.g.*, JA-6 (Motion for Unsealing at 15 (Jan. 26, 2011) (Dkt. 3)); JA-10 (Objections at 27 (Mar. 28, 2011) (Dkt. 45)); JA-11 (Reply In Support Of Objections at 17 (Apr. 14, 2011) (Dkt. 56)).

Because the district court did not conduct an individualized analysis of the § 2703 orders, it failed to hold the government to its burden with respect to these orders. Indeed, before the lower court, the government refused even to address the

other orders, contending that doing so would confirm their existence. JA-10–11 (Resp. to Objections at 30 (Apr. 8, 2011) (Dkt. 55)). This "failure to offer any reason at all is fatal to its attempt to maintain this document under seal under either standard." *Va. Dep't of State Police*, 386 F.3d at 580 (unsealing one document for which no specific arguments were provided).

Recognizing the weakness in its position, the government argues for remand, not reversal. Gov't Br. at 46. As in *Virginia Department of State Police*, because the government failed to provide any justification for sealing the other § 2703 orders and motions, the Court should unseal those documents, not remand for further proceedings. 386 F.3d at 580. That is especially the case given that these particular documents have already been under seal for so long, likely almost fifteen months.

### 3. The District Court Erroneously Failed To Redact These Documents Or To Explain Why Redactions Would Not Be Sufficient.

Even if the government had met its burden to justify sealing these particular § 2703 orders and motions, the appropriate response would have been for the district court to redact any harmful information, not to seal the entire documents. *See, e.g., Baltimore Sun*, 886 F.2d at 66 (holding that courts "must consider alternatives to sealing the documents" before sealing them, which "ordinarily involves disclosing some of the documents or giving access to a redacted

22

version"); *Stone*, 855 F.2d at 181 (same); *In re Knight Publ'g Co.*, 743 F.2d at 235 (same). The district court nevertheless failed to consider such redactions or to explain why they were not possible. That was error, and none of the government's attempts to justify that error have any support.

First, there is no basis for the government's contention that the caselaw requiring redactions is limited to the specific procedural postures of those cases. The cases establish that the procedural requirement of considering redactions applies to all sealing requests. *See, e.g.*, *In re Knight Publ'g Co.*, 743 F.2d at 234-35 (holding that procedural sealing requirements like considering redactions are "prerequisites to a closure order in a criminal proceeding").

Second, the government's assertions that redactions are not appropriate or practical here, "in the midst of an active criminal investigation," Gov't Br. at 48, and that redactions cannot occur "until a charging document is filed," *id.* at 47, are foreclosed by this Court's caselaw. Both *Baltimore Sun* and *Media General* involved pre-indictment, ongoing investigations, but the Court nevertheless reiterated that before sealing, courts must first consider alternatives, such as redactions, and, if they are rejected, explain the reasons for not using them. *Baltimore Sun*, 886 F.2d at 66; *Media Gen. Operations*, 417 F.3d at 429.

Finally, the government's assertion that the magistrate and the district court "*did* consider alternatives to sealing," Gov't Br. at 49 (emphasis in original), is

disingenuous. The redactions that the magistrate considered dealt solely with the litigation documents concerning Movants' motions. The magistrate never addressed the appropriateness of redactions to the other § 2703 orders. The district court, in turn, erroneously held that it was not necessary to consider any alternatives to sealing. JA-275–77.

## IV.   THE DISTRICT COURT ERRED IN NOT REQUIRING PUBLIC DOCKETING.

Public docketing is fundamental both in its own right and as a means to facilitate the right of access by providing notice of judicial events. As a result, courts must publicly docket even sealed judicial records with sufficient information to provide "public notice" of each sealed document and "a reasonable opportunity to challenge" its sealing. *Stone*, 855 F.2d at 181; *see also Baltimore Sun*, 886 F.2d at 65 (same); *In re Wash. Post Co.,* 807 F.2d at 390 (same). That is true in all contexts, including, as here, in pre-indictment, ongoing investigations. *Baltimore Sun*, 886 F.2d at 65 (requiring public docketing in the pre-indictment search warrant context to provide notice and "an opportunity . . . to voice objections to the denial of access"); *see also Media Gen. Operations*, 417 F.3d at 427 (same).

Rather than address this clear caselaw, the government simply contends that "[t]here is [n]o [r]ight to [p]ublic [d]ocketing of [i]nvestigative [p]roceedings" and that these § 2703 orders should be docketed like grand jury documents. Gov't. Br.

at 50.  As discussed earlier, these § 2703 orders and motions are not grand jury documents and should not be treated like them.  *See supra* at 7-9.  Indeed, the government has acknowledged that these documents were not sealed pursuant to Fed. R. Crim. P. 6(e), the grand jury secrecy rule.  Gov't Br. at 15-17.  The creation of a "DM" docket to house this independent proceeding is further evidence that this matter is distinct from any separate grand jury proceeding.

The Federal Rules of Civil and Criminal Procedure, the rules of this Court and of other courts, and Judicial Conference policies all confirm that courts must publicly docket each document filed in court, including sealed documents.  *See* Opening Br. at 49-50 (discussing the specific rules and policies).[12]  The government's claim that Fed. R. Crim. P. 55 is silent on whether § 2703 orders should be docketed ignores the clear text of the rule.  It provides that "every court order or judgment," along with the "date of entry," "must" be entered by the clerk in the public records—*i.e.*, exactly the information Movants have requested.  Every order means *every* order, and the use of "must" makes clear that public docketing is required for any court order, including § 2703 orders.  *See also* Fed. R. Civ. P.

---

[12] Contrary to the government's argument, the Judicial Conference's policy cites the routine nature of sealing cases as a practice to be avoided and urges courts to limit their sealing of entire case files.  Judicial Conference Policy on Sealed Cases, Sept. 13, 2011, *available at* http://www.uscourts.gov/uscourts/News/2011/docs/JudicialConferencePolicyonSealedCivilCases2011.pdf.  Moreover, that a practice is routine does not mean it is constitutional.  *Arizona v. Gant,* 556 U.S. 332, 351 (2009).

79 (same).

The government completely ignores this Court's holding that the information on docket sheets is "harmless" and that sealing them can violate the First Amendment. *In re State-Record Co., Inc.,* 917 F.2d 124, 129 (4th Cir. 1990). As in *In re State-Record*, the docket entries requested here—the name of each document, redacted if necessary, and its filing date—are harmless, and including them on the docket would not impede the government's investigation, especially since the entries would not reveal the particular investigation to which they relate. The individual entries on the ec-3 (Twitter) docket demonstrate that; although some of the listed documents are still sealed, JA-175, those entries have not affected the government's investigation. Indeed, other district courts have implemented docketing with more information than the EC list without harming the government. JA-210–21.

Because this information is harmless, sealed docket sheets that lack individual entries for the public to view "violate[] one of the cardinal rules that closure orders must be tailored as narrowly as possible." *In re State Record Co.*, 917 F.2d at 129; *see also Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 93 (2d Cir. 2004) (invalidating sealed docket sheets because, in part, individual docket entries "endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment"); *United States v. Valenti,* 987 F.2d 708, 715

(11th Cir. 1993) (holding that failure to docket individual pretrial events violated the First Amendment).

The EC running list violates these clear principles. It contains only the docket number, the date the docket number was assigned by the clerk's office, and the name of the assigned judge. JA-175–77. It does not specify the type of order involved, the date of the order, whether the court denied any requests for an order, or whether there have been any motions challenging the orders. In fact, the government concedes that the EC list provides no information whatsoever for any of the other § 2703 orders concerning Movants that were issued before the EC list was created in May 2011, ███████████████████████████████

████████████████████████████████████████████████████

███████████████.[13] Accordingly, with the exception of the indexing of the Twitter documents (ec-3), the EC list violates the requirement that each court document, including sealed documents, must be publicly docketed, with entries identifying its name and filing date. *See, e.g., Baltimore Sun,* 886 F.2d at 65; *Stone,* 855 F.2d at 181; *In re Wash. Post Co.,* 807 F.2d at 390; Fed. R. Crim. P. 55; Fed. R. Civ. P. 79; E.D. Va. Local Crim. R. 49. As here, in *In re State-Record,* the

---

[13] ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

case number, the name of the judge, and the fact of sealing were publicly known, but the individual entries were sealed.  That public information was not sufficient to provide public docketing there, and it is not sufficient here either.  917 F.2d at 129.

The EC list does not, thus, even contain the information on the running list referenced in *Media General*, after which the EC "running list" was presumably modeled.  417 F.3d at 427 (noting that the items "Search Warrant" and "Affidavit Under Seal" were individually docketed on that running list).  Indeed, far from rejecting the need for additional docketing in this case, *Media General* reiterates the requirement of publicly docketing even sealed documents:  "judicial officer[s] must give notice to the public by docketing the order sealing the documents." *Id*. at 435.

Regardless of how the district court is currently docketing search warrants,[14] when the court fails, as here, to even note the type of order being docketed or the order sealing the documents, it fails to provide the required public notice.  It is not enough to indicate that a sealed case exists and to leave the public guessing whether any order was issued, what type of order it was, or whether any other documents were filed.  Indeed, without knowing what type of document has been sealed, the public cannot evaluate if the sealing was appropriate or what the legal

---

[14] The validity of that docketing is not before the Court.

standard for that sealing was, making it practically impossible to challenge that sealing. Without the name and date for each document, a generic entry of "Under Seal v. Under Seal" is meaningless and fails to give the public the required notice and opportunity to exercise its right of access. That may be better for the government, but it defeats the whole purpose of public docketing.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's order, unseal the other § 2703 orders and motions concerning Movants, and require the district court to maintain a public docket concerning these other judicial orders and related documents.

Respectfully submitted,

Dated: March 23, 2012

By: /s/ Aden J. Fine_____
Aden J. Fine
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2500
Facsimile: 212.549.2651
Email: afine@aclu.org

Rebecca K. Glenberg
AMERICAN CIVIL LIBERTIES UNION
    OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, VA 23219
Telephone: 804.644.8080
Facsimile: 804.649.2733
Email: rglenberg@acluva.org

29

Cindy A. Cohn
Lee Tien
Marcia Hofmann
ELECTRONIC FRONTIER
FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: 415.43 6.9333 x108
Facsimile: 415   436.9993
Email: cindy@eff.org
Email: tien@eff.org
Email: marcia@eff.org

**Attorneys for BIRGITTA JONSDOTTIR**

Dated: March 23, 2012            By:  /s/ Rachael E. Meny_____
John W. Keker
Rachael E. Meny
Steven P. Ragland
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415.391.5400
Facsimile: 415.397.7188
Email: jkeker@kvn.com
Email: rmeny@kvn.com
Email: sragland@kvn.com

John K. Zwerling
Stuart Sears
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA 22314
Telephone: 703.684.8000
Facsimile: 703.684.9700
Email: JZ@Zwerling.com
Email:        Stuart@Zwerling.com

30

**Attorneys for JACOB APPELBAUM**

Dated:  March 23, 2012                    By:  /s/ John D. Cline_____
                                         John D. Cline
                                         LAW OFFICE OF JOHN D. CLINE
                                         235 Montgomery Street, Suite 1070
                                         San Francisco, CA 94104
                                         Telephone: 415.322.8319
                                         Facsimile: 415.524.8265
                                         Email: cline@johndclinelaw.com

                                         K.C. Maxwell
                                         LAW OFFICE OF K.C. MAXWELL
                                         235 Montgomery Street, Suite 1070
                                         San Francisco, CA 94104
                                         Telephone: 415.322.8817
                                         Facsimile: 415.888.2372
                                         Email: kcm@kcmaxlaw.com

                                         Nina J. Ginsberg
                                         DIMUROGINSBERG, P.C.
                                         908 King Street, Suite 200
                                         Alexandria, VA 22314
                                         Telephone: 703.684.4333
                                         Facsimile: 703.548.3181
                                         Email: nginsberg@dimuro.com

                                         **Attorneys for ROP GONGGRIJP**

31

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) because it contains 6,970 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

 /s/ Aden J. Fine
Aden J. Fine

March 23, 2012

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2012, the foregoing

Public Reply Brief for Movants-Appellants was filed electronically through the

Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties

by operation of the Court's electronic filing system.


 /s/ Aden J. Fine
Aden J. Fine